UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DONNA STEWART, | ) No. ED CV 11-852-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 9, 2011, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 21, 2011, and June 22, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 2, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on January 24, 1959. [Administrative Record ("AR") at 33, 107.] She has a tenth grade education [AR at 63], and past relevant work experience as a caretaker and a waitress. [AR at 59, 382.]

On August 24, 2004, plaintiff filed an application for Disability Insurance Benefits ("DIB") and protectively filed an application for Supplemental Security Income ("SSI") payments, alleging that she has been unable to work since October 3, 2002,[1] due to mental impairments, including depression and anxiety. [AR at 33, 58-64, 74-78, 102.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 36-50.] A hearing was held on July 11, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 256-73.] On April 10, 2007, the ALJ determined that plaintiff was not disabled. [AR at 573-80.] On July 23, 2007, the Appeals Council denied plaintiff's request for review. [AR at 3-6.] On August 31, 2007, plaintiff filed a complaint in this Court in Case No. ED CV 07-1070-PLA. On November 4, 2008, the Court entered judgment for plaintiff and remanded the case back to the Commissioner for further proceedings. [See AR at 601-08.]

On August 16, 2007, plaintiff filed a subsequent application for Disability Insurance Benefits and protectively filed a subsequent application for Supplemental Security Income payments, alleging that she has been unable to work since October 18, 2002, due to carpal tunnel syndrome and mental impairments, including bipolar disorder, depression, and anxiety. [AR at 300-02, 370-75, 380-86, 406-12.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an ALJ. [AR at 319-32.] On July 10, 2008, a different ALJ held a hearing, at which time plaintiff appeared with counsel and again testified on her own behalf. [AR at 973-97.] A vocational expert ("VE") and a third party witness also testified. [AR at 988-96.] On September 30, 2008, the second ALJ determined that plaintiff was not disabled. [AR at 584-92.]

---

[1] In the final determination of earlier applications for DIB and SSI payments that plaintiff filed on September 16, 2002, plaintiff was found to be not disabled prior to July 20, 2004. [See AR at 277-78, 1008.]

2

On March 23, 2009, the Appeals Council consolidated plaintiff's August 24, 2004, and August 16, 2007, applications for DIB and SSI payments, and remanded the case to a third ALJ for proceedings consistent with the Court's November 4, 2008, Order, as well as additional directives set forth by the Appeals Council. [See AR at 598-600.] On remand, the third ALJ held a hearing on January 24, 2011, at which time plaintiff appeared with counsel and once again testified on her own behalf. A medical expert and a different VE also testified. [AR at 998-1016.] On March 23, 2011, the third ALJ issued an opinion again finding plaintiff not disabled. [AR at 277-90.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/
/
/
/

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and

final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since October 3, 2002, her disability onset date as alleged in her August 24, 2004, applications for DIB and SSI payments. [AR at 280.][2] At step two, the ALJ concluded that plaintiff has the severe impairments of bilateral carpal tunnel syndrome/status post right carpal tunnel release, depressive disorder, not otherwise specified, and anxiety disorder, not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 281.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "medium work" as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c),[4] except that plaintiff "can only climb, bend, balance, stoop, kneel, crouch and crawl frequently; cannot perform forceful[] gripping, torquing with her upper extremities; cannot perform jobs requiring hypervigilance; cannot be in charge of the safety operations of others; cannot perform jobs involving high production, quota, or rapid assembly line work; cannot have more than moderate stress from any/all sources." [AR at 282.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a home health attendant. [AR at 289.] Accordingly, the ALJ determined that plaintiff has not been disabled at any time from July 21, 2004,[5] through March 23, 2011, the date of the decision. [AR at 289-90.]

/

---

[2]   The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. [AR at 280.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

[5]   See supra, note 1.

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly: (1) determined that plaintiff can perform her past relevant work as a home health attendant; (2) discounted plaintiff's credibility; and (3) discounted lay evidence from one of plaintiff's daughters and failed to consider the lay witness testimony of plaintiff's other daughter.[6] [Joint Stipulation ("JS") at 3, 12-17.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.  PAST RELEVANT WORK**

Plaintiff contends that the ALJ improperly determined that she can do her past relevant work as a home health attendant because certain requirements of the job are inconsistent with the limitations in the RFC determination made by the ALJ. [JS at 4-8.]

At step four, the ALJ must determine whether plaintiff's RFC allows her to return to her past relevant work. Lester, 81 F.3d at 828 n.5; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Plaintiff has the burden of establishing that she is incapable of performing her past relevant work. Barnhart v. Thomas, 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). However, the ALJ must make findings of fact regarding plaintiff's RFC, the physical and mental demands of plaintiff's past work, and whether plaintiff can return to her past relevant work "either as actually performed or as generally performed in the national economy." Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001); Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). A claimant is typically the primary source for determining how a job was actually performed. Social Security Ruling[7] 82-62. But when determining how a job is generally performed, the ALJ can rely on the descriptions given by the Dictionary of Occupational Titles ("DOT") or a vocational expert. See SSR 82-62; Johnson

---

[6] Plaintiff's second and third contentions of error are discussed as a single issue in the Joint Stipulation. [See JS at 12-22.]

[7] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435; see also Pinto, 249 F.3d at 845-46 ("the best source for how a job is generally performed is usually the [DOT]") (internal citations omitted). In order for "the ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation" and "the record must contain persuasive evidence to support [it]." Pinto, 249 F.3d at 846-47 (internal quotations and citation omitted).

At the hearing before the ALJ, the vocational expert testified that a person with all of the limitations the ALJ found that plaintiff has can perform plaintiff's past relevant work as a home health attendant. [See AR at 282, 1014-15.] The VE did not state whether her testimony referred to the job as plaintiff had actually performed it in the past, or as it is generally performed in the national economy. [See AR at 1013-15.] In addition, the ALJ did not ask, and the VE did not state, whether there was any conflict between her testimony and the DOT.[8] [See AR at 1013-16.]

At step three of the five-step process, the ALJ found that plaintiff can do medium work, but also found that she cannot, among other things, "perform forceful[] gripping [or] torquing with her upper extremities," "perform jobs requiring hypervigilance," and "be in charge of the safety operations of others." [AR at 282.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a home health attendant (DOT No. 354.377-014), both as she had actually performed it and as it is generally performed in the national economy. [AR at 289.] The ALJ stated that in reaching that conclusion, she had:

> given weight to the opinion of the [VE], who testified that a hypothetical individual with the same age, education and work experience as [plaintiff], and with the residual functional capacity [that the ALJ determined plaintiff has], could meet the demands of [plaintiff's] past job as a home health attendant, both as that job is generally performed ... and as [plaintiff] actually performed it.

[Id.]

---

[8] The ALJ's decision states that the VE "indicated that her testimony was consistent with the information contained in the [DOT]" [AR at 289], but the transcript of the hearing does not reflect that the VE did so. [See AR at 1013-16.]

The Court finds that there is an apparent conflict between the ALJ's finding that plaintiff cannot perform forceful gripping or torquing with her upper extremities and the job of home health attendant both as plaintiff performed it and as described in the DOT. In an undated job description form that plaintiff completed, she described her previous job of "care[]taker" as requiring her to feed, bathe, clean, and care for patients, drive them to doctor appointments, "pull[,] turn[] and lift[]" up to 175 pounds as needed, and lift 50 pounds or more frequently. [See AR at 72.] Similarly, the DOT description of the job of home health attendant states that a person with this job "[a]ssists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs," and "to dress, bathe, and groom [themselves]." [DOT No. 354.377-014.] Moreover, the job of home health attendant is classified as medium work, requiring exertion of "20 to 50 pounds of force occasionally ... and/or 10 to 25 pounds of force frequently ... and/or greater than negligible up to 10 pounds of force constantly." [Id.] The Court is not persuaded that a job requiring an individual to assist patients in and out of bed, in and out of wheelchairs and automobiles, and to and from the lavatory, as well as to exert "20 to 50 pounds of force occasionally ... and/or 10 to 25 pounds of force frequently," is consistent with a limitation from any forceful gripping or torquing with the upper extremities. Insofar as the ALJ relied on the VE's testimony that plaintiff can perform this job, Social Security Ruling 00-4p states that the ALJ has an affirmative responsibility to determine whether the VE's testimony deviates from the DOT and to obtain a reasonable explanation for any deviation. SSR 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (quoting SSR 00-4p). Significantly, the Appeals Council also specifically charged the ALJ with this responsibility in its March 23, 2009, Order. [See AR at 599 ("[B]efore relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles ... and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).").] Nevertheless, neither the ALJ nor the VE offered a reasonable explanation for the conclusion that an individual who is precluded from forceful gripping or torquing with the upper extremities can perform the job of home health attendant -- as it is generally performed, or as plaintiff actually performed it. Thus, the record does not contain persuasive evidence to support

this deviation from the DOT and from plaintiff's description of her former job as actually performed. Remand is warranted on this issue.[6]

**B.  LAY WITNESS TESTIMONY**

Plaintiff also contends that the ALJ improperly discounted lay evidence from one of plaintiff's daughters, and failed to consider the lay witness testimony of plaintiff's other daughter. [JS at 13, 16.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect her ability to work. Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e).  Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987). The ALJ may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

/
/
/

---

[6] Plaintiff also contends that the ALJ's finding that plaintiff "cannot be in charge of the safety operations of others" conflicts with the requirement that a home health attendant "monitor patients and act as a guide, companion, and aide," because "[t]his job, as typically performed[,] would often leave Plaintiff solely responsible for the oversight and care of infirm individuals who have limited capacity to care for themselves." [JS at 6.] The DOT states that a home health attendant "[a]dministers prescribed oral medications" and "[a]ccompanies ambulatory patients outside home, serving as a guide, companion, and aide." [DOT No. 354.377-014.] Thus, it is unclear whether the ALJ's findings that plaintiff "cannot be in charge of the safety operations of others" and "cannot perform jobs requiring hypervigilance," also conflict with the DOT's description of this job. On remand, the ALJ should clarify this issue.

On November 24, 2007, plaintiff's daughter, Teara Stewart, completed a third party function report concerning plaintiff. Teara[7] lived with plaintiff at the time [see AR at 420, 428], and still lived with plaintiff at the time of the January 24, 2011, hearing before the third ALJ. [See AR at 1004-05.] Teara stated that she spent about six hours a day with plaintiff. [AR at 421.] Teara stated that plaintiff had not done any housework "in years," and that she needs to be reminded to bathe, change her clothing, and take her medication. [AR at 422-23.] She also stated that plaintiff does not go outside, does not have any hobbies, and "[does not] do anything but [watch] TV." [See AR at 424-25.] Further, she noted that plaintiff has fears of being alone and experiences "verry [sic] bad" panic attacks. [See AR at 424.]

On July 10, 2008, plaintiff's other daughter, Megan Stewart, testified before an earlier ALJ. [See AR at 988-93, 1004-05.] Megan testified that she lived with plaintiff, and that plaintiff gets easily frustrated and agitated. [See AR at 988-89.] She testified that it is hard for plaintiff to get along with those who are not in her family, and that plaintiff will sometimes hit things when she is angry. [See AR at 988-90.] She further testified that plaintiff will "get totally sidetracked" when she performs daily activities such as vacuuming because she has difficulty concentrating. [See AR at 989.]

In its March 23, 2009, Order, the Appeals Council noted that the second ALJ's decision (dated September 30, 2008) rejected Teara's statements without giving reasons germane to her, and directed the ALJ on remand to "evaluate the lay evidence provided by [plaintiff's] daughter and articulate specific reasons for the weight given the evidence." [See AR at 599-600.] In the March 23, 2011, decision, the ALJ made note of Teara's statements concerning plaintiff's functioning, but found that they were "of far less than persuasive value and ... credible only to the extent that [plaintiff] can do the work described [in the decision]." [See AR at 288-89.] The ALJ did not discuss Megan's testimony. [See AR at 277-90.]

The ALJ did not provide reasons germane to Teara for assigning "far less than persuasive value" to her statements. First, the ALJ stated that Teara's statements "were not given under

---

[7] The Court refers herein to each of plaintiff's daughters by first name.

10

oath." [See AR at 289.] Teara submitted her observations regarding plaintiff's activities and abilities on a "Function Report -- Adult -- Third Party," which is the Social Security Administration's own "Form SSA-3380-BK." [See AR at 421-28.] There is no indication on the form that the person completing the form must make the statements under oath in order for the statements to constitute "acceptable medical evidence" under 20 C.F.R. §§ 404.1513(d), 416.913(d), nor do the regulations themselves require that such forms be completed under oath. See 20 C.F.R. §§ 404.1513(d), 416.913(d) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."). Next, while the ALJ stated that Teara's statements "appear to be no more than a parroting of [plaintiff's] subjective complaints" [see AR at 289], Teara completed the form based on her daily observations while living with plaintiff. Thus, in the absence of the ALJ's identification of which of Teara's statements merely "parrot[ed]" plaintiff's complaints, the statements "constitute[d] qualified evidence" that the ALJ was obligated to consider. See Sprague, 812 F.2d at 1231-32. Third, the ALJ's reason that Teara is not a medical professional is also not a reason germane to her. "Disregard of [lay witness] evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Dodrill, 12 F.3d at 919 (quoting Sprague, 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2))). Fourth, the ALJ was not permitted to conclusorily reject Teara's statements because she "lives with [plaintiff] and therefore has a financial interest in seeing [plaintiff] receive benefits" [AR at 289]. See Smolen, 80 F.3d at 1289 (ALJ's rejection of plaintiff's family members' testimony on the grounds that they were "'understandably advocates, and biased' ... amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified"); see also Regennitter, 166 F.3d at 1298 (ALJ cannot reject lay witness testimony of plaintiff's mother on the basis of presumed bias). Finally, the ALJ's statement that "[Teara's] statements are not supported by the clinical or diagnostic medical evidence," without more, is also not a sufficiently specific reason to reject her statements. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing Stout, 454 F.3d at 1054) ("If an ALJ disregards the

1 testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness' ... [and the reasons] must be specific."). The ALJ did not give any reason germane to Teara to reject her statements.

Moreover, as the ALJ failed to discuss Megan's testimony from the July 10, 2008, hearing, the Court infers that the ALJ implicitly rejected that testimony. The ALJ did not provide legally sufficient reasons to discount Megan's opinion, which was improper.[8] See Sprague, 812 F.2d at 1231-32; Regennitter, 166 F.3d at 1298.

Remand is warranted on this issue.[9]

/
/
/
/
/
/
/
/
/
/

---

[8] While Megan's testimony was given at the July 10, 2008, hearing before the second ALJ, and the March 23, 2011, decision of the third ALJ "incorporates the relevant analysis, findings, and conclusions contained in [the earlier ALJ decisions]" concerning plaintiff's applications for DIB and SSI payments [see AR at 277-78, 280], the second ALJ's decision (dated September 30, 2008) merely summarized Megan's testimony in one sentence [see AR at 588] and stated that "[t]o the extent that [plaintiff] is more limited [than the ALJ's RFC assessment] ... by the various lay statements and testimony, such statements are not consistent with the objective medical findings, and the nature/extent and response to generally conservative care." [AR at 590.] Thus, the September 30, 2008, decision did not provide a reason germane to Megan to reject her testimony, and therefore incorporating that decision into the March 23, 2011, decision does not result in a different outcome.

[9] The Court exercises its discretion not to address herein plaintiff's second contention of error. The Court notes, however, that the ALJ's reasons for discounting plaintiff's credibility appear to be legally adequate.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to reconsider whether plaintiff can perform her past relevant work in light of the restrictions in her RFC assessment, and to reconsider the lay evidence from plaintiff's daughters. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 15, 2012

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE